## Cyphers v. Runyon, et al.

(Decided January 28, 1927.)

## Appeal from Pike Circuit Court.

1. Appeal and Error—Cross-Appeal Cannot be Taken by Request that Latter Portion of Brief be Taken as Such (Civil Code of Practice, Section 755[1]).—Where appellee prosecuted no cross-appeal, but asked in latter portion of brief that it be taken as such, there is no cross-appeal before Court of Appeals, in view of Civil Code of Practice, section 755[1].

2. Vendor and Purchaser—In Contract to Sell Property on which Building was to be Erected at "Cost" Plus $1,200.00, "Cost" was Original Cost Plus Cost of New Building.—Contract to sell property costing $7,000.00 on which building was being erected, providing for purchase price of cost plus $1,200.00, held to mean that "cost" was total or original cost and cost of new building, rather

than original cost only or estimated cost of $9,800.00 contained in contract.

DAUGHERTY & BARRETT for appellant.

STRATTON & STEPHENSON for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

On August 7, 1919, appellee Ernest Runyon purchased from the widow of his deceased uncle two adjoining lots in Elkhorn City, in Pike county, one of which was vacant and the other of which was occupied by a hotel building. The contract of sale recited that the purchase price was $7,000.00, but a dispute arose between Runyon and his aunt over whether certain personal property was included in the sale or not. Litigation ensued which was finally disposed of in Ernest Runyon's favor. Runyon v. Runyon, 199 Ky. 378, 251 S. W. 173. After Ernest Runyon purchased the property from his aunt, as above noted, he entered into a contract with J. M. Blankenbeckler to erect a two-story building on the vacant lot. Before Blankenbeckler got very far with the work under the contract, R. E. Runyon, the father of Ernest, entered into a contract with the appellant, W. A. Cyphers, to sell him the two lots, together with the building then being erected by Blankenbeckler. The following is a skeleton outline of that contract, containing the clauses pertinent to this controversy:

> "This contract, made and entered into this the 6th day of September, 1919, by and between R. E. Runyon, of Russell county, Virginia, party of the first part, and W. A. Cyphers, of Wise county, Virginia, party of the second part:
>
> "Witnesseth: That whereas the party of the first part has this day sold . . . the following real and personal property, to-wit, the two lots lying and being situated in the town of Elkhorn City . . . known as the B. W. Runyon's property, consisting of two houses and lots; the nine-room house known as the Runyon Hotel with all the appurtenances thereto belonging; also, the new two-story building erected and built by J. M. Blankenbeckler on the first lot north of the said Runyon Hotel, said new building to be finished and completed by the said party of the

first part  .  .  .  for which the party of the second part agrees to pay the party of the first part a profit of $1,200.00 on all the property bought from R. E. Runyon from Mrs. B. W. Runyon and the B. W. Runyon's estate, except the said R. E. Runyon is to wire the house complete for electric lights and to finish and complete in white coat work the inside of the new building out of the profits paid or to be paid by the party of the second part. In consideration, the party of the first part claims and represents to the party of the second part that all of the foregoing real and personal property cost the party of the first part $9,800.00, whereas, the party of the second part has agreed to pay a profit of $1,200.00 therein, making the full amount in consideration $11,000.00.'' (Here follows how the purchase price is to be paid, partly cash and partly in deferred payments represented by notes—a vendor's lien to be retained to secure the deferred payments.)

It will be noted that this contract was executed by R. E. Runyon, although the property had been bought by his son, Ernest, a month previous thereto. This suit was brought on this contract by both Ernest Runyon and his father, R. E. Runyon. Just why they were joined as parties plaintiff is not clear to us, but as no point is made by the appellant on this score, we, too, will ignore it.

R. E. Runyon died pending this suit, and it was revived in the name of his personal representative. The purpose of this suit was to collect the unpaid portion of the purchase price of the property sold to Cyphers and to enforce the vendor's lien retained to secure the purchase price. It appears from the evidence that Cyphers never executed the notes as called for by the contract. A deed was tendered him prior to the suit, but was never delivered to him because of his failure to execute the notes. It seems that the Runyons, who lived in Virginia, arranged with Cyphers, who was in Elkhorn City, to supervise the work on the new building being erected by Blankenbeckler, and, as it is satisfactorily established, authorized him to make payments for material and labor, which payments were to be credited against the purchase price called for by this contract. The evidence is very satisfactory that the total amount paid by Cyphers, comprising what he paid the Runyons and what he paid for them, totals $9,082.81. The real controversy in this suit

is over the question, ''What was the purchase price?'' It was the appellee's theory that the purchase price was $11,000.00. It was the appellant's theory that the purchase price was a profit of $1,200.00 over what Ernest Runyon had to pay his aunt for the property he bought from her, and as the evidence, without dispute, shows he paid her but $7,000.00 for it, that the purchase price was $8,200.00. The learned special judge, Hon. J. P. Hobson, Jr., who tried this case, rejected both theories. It was his opinion that the ''purchase price'' was the sum total of what Ernest Runyon paid his aunt, the cost of the new building, excepting that part which the contract said R. E. Runyon was to stand, and a profit of $1,200.00. The evidence satisfactorily establishes this sum to be $10,-434.26. He accordingly entered judgment against Cyphers for the difference between this last stated sum and the $9,082.81, being the credits he found Cyphers entitled to, which difference amounts to $1,341.45. He also provided in his judgment for the enforcement of the vendor's lien to secure the payment of this sum. Cyphers appeals.

The Runyons have prosecuted no cross-appeal, though they ask, in the latter portion of their brief, that it be taken as a cross-appeal. It is obvious that this is no way to prosecute a cross-appeal, and there is none before us. Civil Code, section 755-1.

We are of the opinion that the learned special judge correctly construed the contract between the parties. Ernest Runyon had first purchased the property in question from his aunt. It had cost him $7,000.00. He then entered into a contract with Blankenbeckler to put up a two-story house on the vacant lot, for the labor alone for which he agreed to pay $1,000.00. That the cost of this new building was to be included, in determining the basic amount to which the profit of $1,200.00 was to be added, is clear, especially in view of the provision in the contract that Runyon was to pay for certain work on the new building out of this profit. If the cost of the new building was not to be added to the $7,000.00 which Ernest paid his aunt, there was no need for such a provision in the contract because if the $1,200.00 was added only to the $7,000.00, as it is admitted this $7,000.00 did not cover the cost of the new building, then the entire cost of the new building would have to be stood by the Runyons out of the profit of $1,200. However, the contract provides that only a small part of the cost of the new building was

to be borne by the Runyons out of this profit. Further, the contract recites that it is estimated that the cost of the property sold to Cyphers was $9,800.00. This is practically $800.00 more than the chancellor found it actually to be. But this estimate, given in advance of the work and probably made liberal to cover all contingencies, was not such a bad guess at what the property was going to cost. Its presence in the contract, though, goes to establish the proposition that the cost of the new building was added to the $7,000.00 agreed to be paid to Ernest Runyon's aunt. This latter amount did not have to be estimated. It was already fixed and settled. If the cost of the new building was to come out of the profit of $1,200.00, there was no need to put an estimate on the cost in the contract. All the parties had to do was to add the $1,200.00 to the $7,000.00. Their action to the contrary establishes that the appellant's theory of the purchase price was not the correct one.

Although, as stated, there is no cross-appeal before us, we are also convinced that the appellee's theory was likewise incorrect. The contract, reading it from its four corners, does not provide for a fixed purchase price, but a purchase price to be calculated on the basis of the cost of the property plus a profit of $1,200.00. The figure of $9,800.00 appearing in the contract is clearly not an agreement that such sum should represent the cost of the property. The cost had then not been determined as the house was yet in the course of being erected. It was purely an estimate.

As the learned chancellor correctly construed the contract, and as the evidence sustains his findings as to what the cost was and as to what credits appellant was entitled, his judgment is correct, and it is affirmed.